■ Eric Johnson et al., Appellants, v St. Barnabas Hospital, Defendant, and Norma B. Milanes-Roberts et al., Respondents. [860 NYS2d 40]—

Judgment, Supreme Court, Bronx County (Betty Owen Stinson, J.), entered on or about March 12, 2007, dismissing the complaint as against defendants-respondents in the midst of a jury trial, unanimously affirmed, without costs.

The trial court properly directed a verdict in favor of respondents at the close of plaintiffs' case in this medical malpractice action where the infant plaintiff was injured during delivery. Trial testimony established that during the delivery, at which respondent obstetrician Dr. Milanes-Roberts was not present, respondent DeMaggio, a midwife, encountered a shoulder dystocia, and with assistance, she completed a series of obstetrical maneuvers on plaintiff mother to dislodge the infant's shoulder, resulting in the delivery of the infant. However, the infant sustained injury to his brachial plexus, which resulted in Erb's palsy, a syndrome that causes the affected arm to lose motor function.

Plaintiffs' expert, Dr. Stuart Edelberg, testified there are four recognized maneuvers to relieve a shoulder dystocia. According to Dr. Edelberg, respondent DeMaggio appropriately used two of those maneuvers to deliver the infant. The Apgar scores were within normal ranges. However, he opined that DeMaggio used "excessive downward lateral [traction] to the baby's spine . . . , and directly caused the brachial plexus injury." He further opined that "since this baby does have an injury, I know that excessive traction was used."

On cross-examination, Dr. Edelberg stated that DeMaggio recognized the condition of the shoulder dystocia promptly, that she responded appropriately and that the baby delivered immediately after her response with no difficulty. He reiterated that he based his opinion that excessive traction was used on the fact that the infant had a brachial plexus injury following delivery as well as "what's stated in our literature. What we presented to in some of our letters to the editor" as well as "what the standard textbooks in our field say." Neither the texts nor letters were offered into evidence. Dr. Edelberg stated that he was not present during delivery and did not remember the medical records he reviewed disclosing any other bruises on the infant.

Dr. Edelberg admitted it was very well known that brachial

plexus injury could occur even when the appropriate maneuvers are correctly used to resolve shoulder dystocia, and that the occurrence of a brachial plexus injury does not mean incorrect procedures or techniques were used.

The record establishes that plaintiffs failed to demonstrate a departure from good and accepted medical practice. The opinion of plaintiffs' expert that a departure existed because there was an injury is not sufficient because evidence of injury alone does not mean that there was negligence on the part of respondents (*see Landau v Rappaport*, 306 AD2d 446, 447 [2003]; *compare Sutherland v County of Nassau*, 151 AD2d 468, 469 [1989], *lv dismissed* 76 NY2d 1017 [1990]). Nor did the court err in refusing to submit the case to the jury on the theory of res ipsa loquitur, where plaintiffs failed to establish that the injuries at issue would not occur in the absence of negligence (*see Abbott v New Rochelle Hosp. Med. Ctr.*, 141 AD2d 589, 590-591 [1988], *lv denied* 72 NY2d 808 [1988]). Dr. Edelberg testified on cross-examination that there are causes for a brachial plexus injury other than excessive traction. The first element of res ipsa loquitur, i.e., that negligence may be inferred from the mere happening of the event, was not established. The testimony of plaintiffs' expert only provided possible explanations for the injury sustained by the infant plaintiff. Concur—Mazzarelli, J.P., Andrias, Friedman and Sweeny, JJ.